# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 10, 2022         Decided June 14, 2022

No. 21-1122

NEW FORTRESS ENERGY INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

———

Consolidated with 21-1157

———

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

———

*Shay Dvoretzky* argued the cause for petitioner. With him on the briefs were *John S. Decker*, *John N. Estes III*, *William R. Barksdale*, *Parker A. Rider-Longmaid*, and *Kyser Blakely*.

*Robert H. Solomon*, Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Matthew R. Christiansen*, General Counsel, and *Robert M. Kennedy*, Senior Attorney.

*Raghu Murthy* was on the brief for *amici curiae* El Puente de Williamsburg, Inc.- Enlace Latino de Accion Climatica, et al. in support of respondent.

Before: TATEL\*, MILLETT, and PILLARD, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Can a 75-foot pipe be a pipeline? The Federal Energy Regulatory Commission thinks so. Because petitioner has given us no basis to question that judgment, we deny the petitions for review.

## I.

The Natural Gas Act (NGA) vests the Commission with broad authority to regulate the transportation and sale of natural gas. 15 U.S.C. § 717 et seq. Section 7 prescribes a regulatory framework for natural gas facilities engaged in interstate commerce. *See id.* § 717f; *Minisink Residents for Environmental Preservation and Safety v. FERC*, 762 F.3d 97, 101 (D.C. Cir. 2014) (discussing the Commission's "broad authority to regulate the transportation and sale of natural gas in interstate commerce"). Section 3 governs the import and export of natural gas, as well as the construction and operation of certain liquefied natural gas (LNG) facilities. *See* 15 U.S.C. § 717b; *Sierra Club v. FERC*, 827 F.3d 36, 40–41 (D.C. Cir. 2016) (describing the Commission's authority over natural gas facilities and the Department of Energy's authority over natural gas as a commodity).

As relevant here, section 3 gives the Commission "exclusive authority to approve or deny an application for the

---

\* Judge Tatel assumed senior status after this case was argued and before the date of this opinion.

siting, construction, expansion, or operation of an LNG terminal." 15 U.S.C. § 717b(e)(1). The Act defines "LNG terminal[s]" as

> all natural gas facilities located onshore or in State waters that are used to receive, unload, load, store, transport, gasify, liquefy, or process natural gas that is imported to the United States from a foreign country, exported to a foreign country from the United States, or transported in interstate commerce by waterborne vessel.

*Id.* § 717(a)(11). Notwithstanding this "broad definition," the Commission has interpreted its jurisdiction over LNG terminals to extend only to natural gas facilities "that receive [or] send out gas by pipeline," not those that receive or send out gas by "waterborne vessels, trucks, [or] trains." *Shell U.S. Gas & Power, LLC*, 148 FERC ¶ 61,163, P 43 (2014); *see Pivotal LNG, Inc.*, 151 FERC ¶ 61,006, P 11 (2015) (LNG terminals "must be . . . connected to a pipeline that delivers gas to or sends gas from the facility."); *Emera CNG, LLC*, 148 FERC ¶ 61,219, P 13 (2014) (same). This pipeline requirement, the Commission explained in *Shell U.S. Gas & Power*, stems from the Act's "legislative history," which "indicates that Congress recognized pipelines as the only method of transporting gas in 1938 when it enacted the NGA, that Congress did not then foresee the transportation of gas by means other than pipeline, and that Congressional intent in the NGA was to regulate pipelines, not all modes of transporting gas." 148 FERC ¶ 61,163 at P 40; *see United Distribution Cos. v. FERC*, 88 F.3d 1105, 1122 (D.C. Cir. 1996) (per curiam) ("Federal regulation of the natural gas industry [was] . . . designed to curb pipelines' potential monopoly power over gas transportation.").

This case concerns the Commission's application of its pipeline requirement to an LNG handling facility in San Juan, Puerto Rico. *New Fortress Energy LLC* (*Original Order*), 174 FERC ¶ 61,207, P 1 (2021); *New Fortress Energy LLC* (*Rehearing Order*), 176 FERC ¶ 61,031, P 1 (2021). The facility, constructed and operated by New Fortress Energy LLC, receives LNG from a floating storage unit moored at San Juan Harbor which, in turn, receives LNG from shuttle vessels that deliver LNG imports from ocean-going, bulk-carrier tankers. *Original Order*, 174 FERC ¶ 61,207 at P 3. The facility gasifies a portion of this imported LNG and then sends it to the abutting San Juan Power Plant via a 75-foot, 10-inch-diameter pipe. *Id.* at PP 4–5. The facility also transports LNG to industrial customers via truck. *Id.* at P 4.

While constructing the facility, New Fortress received "informal advice" from Commission staff suggesting the Commission would not assert jurisdiction. *See* 18 C.F.R. § 388.104. Under Commission regulations, such "opinion[s]" do "not represent the official views of the Commission," *id.*, and shortly after the facility began operating, the Commission issued an order to show cause why the facility is not subject to Commission jurisdiction as an LNG terminal operating in foreign commerce. In response, New Fortress argued among other things that the 75-foot pipe is not a "pipeline," but the Commission disagreed, finding the facility "connected to a pipeline" because the pipe "sends out gas" to San Juan Power Plant. *Original Order*, 174 FERC ¶ 61,207 at PP 22, 28. Commissioner Danly dissented, arguing that the Commission's decision nullifies its pipeline requirement and replaces it with an "'any type of piping'" requirement. *Id.* at PP 7–8 (Danly, Comm'r, dissenting). The Commission denied rehearing by operation of law due to its inaction, and New Fortress petitioned for review. The Commission then issued an order addressing and rejecting each of New Fortress's rehearing

arguments. *Rehearing Order*, 176 FERC ¶ 61,031 at PP 6–23. New Fortress again petitioned for review, and we consolidated the petitions.

**II.**

New Fortress mounts several challenges to the Commission's decision, most of which boil down to a single argument: the Commission engaged in arbitrary-and-capricious decisionmaking by rewriting *Shell*'s pipeline requirement without "acknowledg[ing] its departure from precedent" or "provid[ing] a reasoned explanation for the departure." Pet'r's Br. 40; *see* 5 U.S.C. § 706(2)(A).

When an agency deviates from its own precedent, it must "'display awareness that it *is* changing position,' show 'the new policy is permissible under the statute,' and 'show that there are good reasons for the new policy.'" *Baltimore Gas & Electric Co. v. FERC*, 954 F.3d 279, 286 (D.C. Cir. 2020) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009)). Here, however, the Commission's decision is perfectly consistent with its case law. As required by the Administrative Procedure Act, the Commission adequately justified its application of "existing policy" by "explain[ing] how [its decision] coheres with previous decisions." *Id.*; *see Automated Power Exchange, Inc. v. FERC*, 204 F.3d 1144, 1146 (D.C. Cir. 2000) (rejecting arbitrary-and-capricious challenge where the Commission "explained why its decision" was "in harmony with its relevant precedent").

In *Shell*, the flagship Commission decision articulating the pipeline requirement, the Commission explained that "its section 7 jurisdiction over gas in interstate commerce is limited to gas transported by pipeline, and consequently [it] has only asserted section 7 jurisdiction over pipeline facilities used to transport gas in interstate commerce and facilities used to store

gas . . . that is being transported in interstate commerce by pipeline." *Shell*, 148 FERC ¶ 61,163 at P 38. "Similarly," the Commission continued, "[it] has only exercised its section 3 authority over the siting of facilities used for imports or exports . . . when gas is being moved by pipeline." *Id.* at P 39. The Commission concluded that it lacked section 3 jurisdiction over Shell's LNG import facility because it included "no pipeline interconnections" and, instead, used ships, trucks, and trains to transport natural gas. *Id.* at P 43. Following *Shell*, the Commission reiterated that an LNG import or export facility, in order to be subject to section 3 jurisdiction, must be "connected to a pipeline that delivers gas to or sends gas from the facility." *Pivotal*, 151 FERC ¶ 61,006 at P 11; *accord Emera*, 148 FERC ¶ 61,219 at P 13.

In determining whether New Fortress's LNG handling facility constitutes an "LNG terminal," the Commission discussed *Shell* at length and explained why exercising jurisdiction in this case comports with *Shell*. *Original Order*, 174 FERC ¶ 61,207 at PP 22–24; *Rehearing Order*, 176 FERC ¶ 61,031 at PP 14–15, 19–20. In *Shell*, the Commission recounted, the import facility "would not connect to a pipeline (or piping) of any type; [it] would receive LNG by ship and subsequently transport the imported LNG by ship, truck, or train." *Rehearing Order*, 176 FERC ¶ 61,031 at P 14. Thus, the Commission's "finding . . . that the [import facility] was non-jurisdictional . . . was based on the absence of piping of any kind that would enable the [import facility] to receive natural gas for liquefaction or to send out natural gas as revaporized LNG." *Id.* Because New Fortress's LNG handling facility "sends out gas" via pipe, the Commission explained, it bears little resemblance to the import facility in *Shell* over which the Commission lacked jurisdiction. *Original Order*, 174 FERC ¶ 61,207 at PP 22, 28.

New Fortress insists that the short "pipe" connecting its facility to San Juan Power Plant is not a "pipeline," observing that in *Shell*, the Commission declined to exercise jurisdiction over a domestic liquefaction facility in Louisiana that moved gas to adjacent industrial customers using "'short segments of pipe.'" Pet'r's Br. 38 (quoting *Shell*, 148 FERC ¶ 61,163 at P 26). As to the domestic Louisiana facility, the Commission did not address its Section 3 authority over LNG facilities that "transport . . . natural gas that is imported to the United States from a foreign country" or "exported to a foreign country from the United States." 15 U.S.C. § 717a(11); *see Shell*, 148 FERC ¶ 61,163 at P 44. Rather, the Commission considered its Section 7 authority over interstate commerce, as well as its Section 3 authority over LNG facilities that "transport . . . natural gas that is . . . transported in interstate commerce by waterborne vessel." 15 U.S.C. § 717a(11); *see Shell*, 148 FERC ¶ 61,163 at PP 44, 46. Thus, as the Commission explained in its order denying rehearing, the jurisdictional status of the Louisiana facility turned "not . . . on the physical characteristics of any piping connected to the facility," but rather on "the fact that the facility . . . would not contribute to the further transportation of gas in *interstate* commerce." *Rehearing Order*, 176 FERC ¶ 61,031 at P 20 (emphasis added); *see Shell*, 148 FERC ¶ 61,163 at PP 46–47 (Because the Louisiana facility "will not liquefy gas in order for it to be transported to a downstream pipeline, . . . [the facility] will not be transporting gas in interstate commerce" subject to the Commission's section 3 or section 7 jurisdiction). The pipe that delivered gas to industrial customers "related only to this consideration, which is irrelevant to whether New Fortress['s] facility is an LNG terminal operating in *foreign* commerce." *Original Order*, 174 FERC ¶ 61,207 at P 25 (emphasis added).

Relatedly, New Fortress argues that the Commission's section 3 pipeline requirement is identical to its section 7

requirement, which, according to New Fortress, limits Commission jurisdiction to facilities connected to larger pipeline "system[s]" or "grid[s]." Pet'r's Br. 41–42 (internal quotation marks omitted); *see id.* at 58–59. As the Commission explained, however, sections 3 and 7 are not interchangeable. *Rehearing Order*, 176 FERC ¶ 61,031 at P 18. Because section 7 applies only to facilities operating in interstate commerce, jurisdiction thereunder requires interconnection with an "interstate pipeline." *Shell*, 148 FERC ¶ 61,163 at P 38; *see Rehearing Order*, 176 FERC ¶ 61,031 at P 11 (noting that the Commission has declined to exercise section 7 jurisdiction when "none of the [facility's] regasified LNG would be reintroduced into an interstate pipeline"). Section 3, as applied to import and export facilities, requires only that the facility "connect[s] to piping which enables the facility to receive . . . or send out [natural gas]." *Rehearing Order*, 176 FERC ¶ 61,031 at P 15; *accord Pivotal*, 151 FERC ¶ 61,006 at P 11; *Emera*, 148 FERC ¶ 61,219 at P 13. Moreover, the Commission made quite clear that its prior references to "pipeline grid[s]" should not be construed as "placing particular emphasis on the importance of the physical . . . characteristics of the facility's connection to piping." *Rehearing Order*, 176 FERC ¶ 61,031 at P 15. Indeed, the Commission has stated that, even under section 7, "[t]he length of pipe . . . is irrelevant in determining whether [a] facility is jurisdictional." *Shell*, 148 FERC ¶ 61,163 at P 38 n.71; *see id.* at P 28 (emphasizing that Section 7 jurisdiction requires the "flow of natural gas in an *interstate* pipeline system").

New Fortress mounts several other unsuccessful challenges to the Commission's decision. First, it argues that the Commission failed to consider New Fortress's and dissenting Commissioner Danly's proposal to "treat pipes and pipelines differently." Pet'r's Br. 49. The Commission, however, reasonably rejected this proposal. *Rehearing Order*,

176 FERC ¶ 61,031 at P 10. Reiterating that the pipeline requirement for LNG facilities operating in foreign commerce turns on whether piping "enables the facility to receive . . . or send out [natural gas]," the Commission explained that the "distinctions between pipeline and piping" are immaterial to this determination. *Id.* at P 15 (first quote); *id.* at P 10 (second quote). The physical characteristics of piping are merely "a function of the volume of LNG to be imported or exported and the relative distance between the LNG terminal and the ultimate end-user." *Original Order*, 174 FERC ¶ 61,207 at P 23. The Commission also pointed out that it "has never considered" a pipeline's physical characteristics when determining whether a facility is an LNG import or export terminal. *Id.*; *accord Rehearing Order*, 176 FERC ¶ 61,031 at P 10. Such a formulation of the pipeline requirement, the Commission cautioned, "could lead to the result that the Commission's jurisdiction would not attach to a large-scale LNG export terminal that receives natural gas directly from nearby production and gathering facilities or an import facility directly connected to a large local distribution company." *Original Order*, 174 FERC ¶ 61,207 at P 23.

Next, New Fortress asserts that "labeling a 75-foot pipe as a pipeline" is "at odds with industry usage, precedent, and ordinary English," which, in its view, describe pipelines as miles-long, large-scale transportation systems. Pet'r's Br. 60–61. This argument, however, simply reprises New Fortress's contention that the pipeline requirement turns on the physical characteristics of the piping, an interpretation that the Commission reasonably rejected.

New Fortress then claims that *Shell* engendered reliance interests that the Commission failed to consider before "changing its policy." Pet'r's Br. 35, 46–48. But because the Commission's orders reasonably applied *Shell*, rather than

departing from it, the Commission had no obligation to consider reliance interests. *See MediNatura, Inc. v. FDA*, 998 F.3d 931, 940 (D.C. Cir. 2021) (explaining that, "[w]hen an agency changes policy," it must consider reliance interests engendered by its prior policy).

Finally, New Fortress contends that the Commission's "new 'any type of piping' test" is "too broad . . . to be plausible" and "'offers no meaningful guidance'" on the scope of jurisdiction over regulated parties. Pet'r's Br. 38 (first quote); *id.* at 62 (second quote); *id.* at 55 (third quote) (quoting *U.S. Postal Service v. Postal Regulatory Commission*, 787 F.3d 740, 754 (D.C. Cir. 2015)). Once again, the Commission created no new test, instead applying its well-established requirement that LNG import and export terminals must be connected to a pipeline that "delivers gas to or sends gas from the facility." *Pivotal*, 151 FERC ¶ 61,006 at P 11; *accord Emera*, 148 FERC ¶ 61,219 at P 13; *Rehearing Order*, 176 FERC ¶ 61,031 at P 15. Contrary to New Fortress's assertions, this standard does not bring "every" LNG facility within the Commission's jurisdiction. Pet'r's Br. 62. It simply establishes jurisdictional boundaries based on the pipeline's role in transporting gas to or from the facility rather than the pipeline's physical characteristics.

**III.**

Several environmental, community, and labor organizations filed an amicus brief urging that we deny New Fortress's petitions on the grounds that, under the "plain meaning of the [NGA]," jurisdiction "does not turn on the presence of a pipeline." Amicus Br. 10–11. But this issue was not raised by New Fortress, "the only petitioner before the Court," *Edison Electric Institute v. OSHA*, 849 F.2d 611, 625 (D.C. Cir. 1988), nor meaningfully addressed by either party as

their principal briefs preceded amici's. If amici wished to challenge the validity of the pipeline requirement under the statute, they "should have done so by filing a petition for review properly raising the issue." *Id.*

## IV.

For the foregoing reasons, we deny the petitions for review.

*So ordered.*